**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **SYMBOLOGY INNOVATIONS LLC,** | |
| Plaintiff, | |
| v. | C.A. No. 1:18-cv-00565-GMS |
| **BRUNSWICK CORPORATION,** **d/b/a LIFE FITNESS,** | **TRIAL BY JURY DEMANDED** |
| Defendants. | |

**PLAINTIFF SYMBOLOGY INNOVATIONS LLC'S OPPOSITION TO DEFENDANT
BRUNSWICK CORPORATION'S RULE 12(b)(6) MOTION TO DISMISS FOR
<u>FAILURE TO STATE A CLAIM</u>**

# Table of Contents

I.    NATURE AND STAGE OF THE PROCEEDINGS ........................................................... 1

II.    SUMMARY OF THE ARGUMENT ............................................................................... 1

III.   STATEMENT OF FACTS ............................................................................................ 2

IV.   APPLICABLE LAW ................................................................................................... 3

    A.   Motion to Dismiss for Failure to State a Claim ................................................... 3

    B.   Patent Eligibility under 35 U.S.C. § 101 ............................................................. 4

    C.   Burden of proof of patent invalidity .................................................................... 7

V.    ARGUMENT ............................................................................................................... 8

    A.   The Patents-in-Suit are directed to Patent Eligible Subject Matter ....................... 8

       a)   Step 1: The Asserted Claims are not drawn to an abstract idea ...................... 8

       b)   Step 2: Claim 1 recites an inventive concept ............................................... 14

    B.   SI plead sufficient detail to provide notice of its infringement allegations ..................................... 18

VI.   CONCLUSION ........................................................................................................... 19

## Table of Cases

*01 Communique Lab., Inc. v. Citrix Sys., Inc.*,
  151 F. Supp. 3d 778 (N.D. Ohio 2015)..............................................................................11

*Alice Corp. Pty. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014)................................................................................................8, 9, 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................................................7

*Association for Molecular Pathology v. Myriad Genetics, Inc.*,
  133 S.Ct. 2107 (2013).......................................................................................................8

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018) .....................................................................................23

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016)..............................................................................8, 10, 11

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).........................................................................................................7

*Bilski v. Kappos*,
  561 U.S. 593 (2010).........................................................................................................9

*California Inst. of Tech. v. Hughes Commc'ns Inc.*,
  59 F. Supp. 3d 974 (C.D. Cal. 2014) .............................................................................11

*Chamberlain Grp., Inc. v. Linear LLC*,
  114 F. Supp. 3d 614 (N.D. Ill. 2015) .............................................................................9

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014).....................................................................................15

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed.Cir. 2011)........................................................................................9

*DataTern, Inc. v. Microstrategy, Inc.*,
  No. CV 11-11970-FDS, 2015 WL 5190715  (D. Mass. Sept. 4, 2015) ........................11

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014).......................................................................9, 10, 17, 18

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (2016).................................................................................................passim

*FairWarning IP, LLC v. Iatric Sys., Inc.*,

839 F.3d 1089 (Fed. Cir. 2016) ........................................................................................... 8

*Front Row Techs., LLC v. NBA Media Ventures, LLC*,

No. CIV 10-0433 JB/SCY, 2016 WL 5404094  (D.N.M. Aug. 30, 2016) ............................ 11

*Gottschalk v. Benson*,

409 U.S. 63 (1972) ............................................................................................................ 9

*In re Bill of Lading Transmission & Processing Sys. Patent Lit.*,

681 F.3d 1323 (Fed. Cir. 2012) ......................................................................................... 7

*In re TLI Commc'ns LLC Patent Litig.*,

823 F.3d 607 (Fed. Cir. 2016) ........................................................................................... 9

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,

837 F.3d 1299 (Fed. Cir. 2016) ..................................................................................... 9, 10

*Microsoft Corp. v. i4i Ltd. P'ship*,

564 U.S. 91 (2011) ...................................................................................................... 11, 20

*Perdiemco, LLC v. Industrack LLC*,

No. 2:15-CV-1216-JRG-RSP, 2016 WL 5719697 (E.D. Tex. Sept. 21, 2016) ...................... 10

*RecogniCorp, LLC v. Nintendo Co.*,

855 F.3d 1322 (Fed. Cir. 2017) ......................................................................................... 15

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,

873 F.3d 905 (Fed. Cir. 2017) ..................................................................................... 12, 16

*Smartflash LLC v. Apple Inc.*,

No. 6:13CV447-JRG-KNM, 2015 WL 661174 (E.D. Tex. Feb. 13, 2015) ............................ 10

*Wolf v. Capstone Photography, Inc.*,

No. 2:13-CV-09573, 2014 WL 7639820 (C.D. Cal. Oct. 28, 2014) ...................................... 11

## Statutes

35 U.S.C.  § 101 .............................................................................................................. passim

35 U.S.C.  § 282 ...................................................................................................................... 11

35 U.S.C.  § 271 ...................................................................................................................... 20

## Rules

Rule 12(b)(6) of the Federal Rules of Civil Procedure .......................................................... 5, 7

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Symbology Innovations LLC's ("SI") filed this lawsuit on April 13, 2018 alleging the infringement U.S. Patent Nos. 8,424,752 (the "'752 patent"); 8,651,369 (the "'369 patent"); 8,936,190 (the "'190 patent") (collectively the "Patents-in-Suit"). In response, Brunswick Corporation ("Brunswick" or "Defendant") filed a Motion to Dismiss SI's complaint for failure to state claim under Federal Rule of Civil Procedure 12(b)(6) (the "Motion to Dismiss") on May 8, 2018.

## II.   SUMMARY OF THE ARGUMENT

Brunswick alleges that the Patents-in-Suit purportedly do not embrace patent eligible subject matter. *See* D.I. No. 10 at p. 5. Particularly, Brunswick incorrectly contends that the claims are directed to the abstract idea of data recognition and retrieval and that none of the claims recite any non-conventional hardware or software. *Id.* A more thorough analysis of the Patents-in-Suit demonstrates that Brunswick is mistaken. Contrary to Brunswick's contentions, the claims of the Patents-in-Suit are directed to improvements in computer-related technology as discussed by the Federal Circuit in *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). Specifically, the technology covered by the Patents-in-Suit improves the manner in which an electronic device processes symbology associated with an object through the performance of particular steps in order to provide information about the object to a user of the device. As such, the claims are not directed to an abstract idea but rather at addressing a specific issue within computer technology.  In any event, SI is filing an Amended Complaint concurrently with this opposition to the Motion to Dismiss including additional allegations showing that the claims contain an inventive concept. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d

1121, 1126–27 (Fed. Cir. 2018) ("We have held that patentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis under Rule 12(b)(6).")

Additionally, Brunswick alleges that the Complaint fails because it purportedly does not allege facts suggesting that it practices the claimed invention. *See* D.I. No. 10 at p. 5. The Complaint, however, provide facts which plausibly show that Brunswick infringes the Patents-in-Suit. As such, SI properly pled infringement of the Patents-in-Suit.

In view of the foregoing and the reasons set forth below the Court should deny Brunswick's Motion to Dismiss.

## III.   STATEMENT OF FACTS

The Patents-in-Suit are similar in scope[1] and disclose systems and methods for enabling a portable electronic device to retrieve information about an object—such as article of commerce, product, service, or any item associated with various types of symbology—when the object's symbology is detected. Particularly, the Patents-in-Suit address and solve a problem existent within computer technology at the time of the invention. Namely, improving the manner in which an electronic device processes symbology associated with an object through the performance of particular steps and provides information about the object to a user of the device, thus making existing electronic devices at the time of the invention more dynamic and efficient. *See* '752 patent, 1:65-2:16. Moreover, the claimed systems and methods allow for the automatic detection of symbology; alerting a user whether symbology has been detected; and asking whether decoding of the symbology is desired. *See* '752 patent, 11:25-34. As noted in the specification, portable devices at the time of the invention could be "enhanced with software applications to enable

---

[1] In the Motion to Dismiss, Brunswick indicates that claim 1 of the '752 patent is representative of the claims in the Patents-in-Suit. That statement, however, is inaccurate. The more accurate statement would be that claim 1 of the '752 patent is only representative of the independent claims in the Patents-in-Suit.

information retrieval procedures as described in the present disclosures." *Id*. at 3:50-55. As such, the claimed methods and systems covered by the Patents-in-Suit address and overcome a particular problem within computer technology. Defendant uses such methods and systems and as such, infringes the Patents-in-Suit.

It is worth noting that neither the parent patent nor the continuation applications claiming priority to the Patents-in-Suit (collectively, the "Patent Family"), were rejected under 35 U.S.C. § 101 as being directed to patent-ineligible subject matter during the corresponding prosecution. *See* Exhibits 1-8 – Office Actions for each member of the Patent Family. The claims covered by the Patent Family are generally similar in scope and were filed between 2010 and 2017. In total, the Patent Family comprises seven applications that have matured into patents; and one application that is currently pending. None were rejected as being directed to an abstract idea. This is compelling and persuasive evidence from the United States Patent and Trademark Office that the Patents-in-Suit are not directed to patent ineligible subject matter.

By focusing of individual components of the claims Brunswick contends that the claimed methods and systems disclosed in the Patents-in-Suit suit are conventional. *See* D.I. No. 10 at p. 7. As discussed below, however, taken together as an ordered combination, the claims recite an invention that is neither routine nor conventional.

## IV.   APPLICABLE LAW

### A.  Motion to Dismiss for Failure to State a Claim

Under Rule 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft*, 556 U.S. at 678). In other words, plausibility should not be treated as a "probability requirement at the pleading state; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal" the defendant is liable for the misconduct alleged. *In re Bill of Lading Transmission & Processing Sys. Patent Lit.*, 681 F.3d 1323, 1341 (Fed. Cir. 2012) (quoting *Twombly*, 550 U.S. at 556).

Patent eligibility can be determined at the Rule 12(b)(6) stage. *Aatrix Software*, 882 F.3d at 1125 (citations omitted). This is true only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law. As the Federal Circuit has explained, "plausible factual allegations may preclude dismissing a case under § 101 where, for example, 'nothing on th[e] record ... refutes those allegations as a matter of law or justifies dismissal under Rule 12(b)(6).'" *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016) (quoting *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016)). If there are claim construction disputes at the Rule 12(b)(6) stage, the court must proceed by adopting the non-moving party's constructions, *Bascom*, 827 F.3d at 1352; or the court must resolve the disputes to whatever extent is needed to conduct the § 101 analysis, which may well be less than a full, formal claim construction. *Aatrix Software*, 882 F.3d at 1125 (citations omitted).

**B.  Patent Eligibility under 35 U.S.C. § 101**

Section 101 of the Patent Act defines the subject matter eligible for patent: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions

and requirements of this title." *See* 35 U.S.C. § 101. The judicially recognized exceptions from this provision are for "[l]aws of nature, natural phenomena, and abstract ideas." *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S.Ct. 2347, 2354 (2014) (citing *Association for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S.Ct. 2107, 2116 (2013)). These exceptions represent "the basic tools of scientific and technological work." *Alice,* 134 S.Ct. at 2354 (quoting *Ass'n for Molecular Pathology*, 133 S.Ct. at 2116). The rationale behind these exceptions is "one of pre-emption" grounded on the "concern that patent law not inhibit further discovery by improperly tying up the future use of these building blocks of human ingenuity." *Id.* However, the Supreme Court has cautioned unequivocally that "we tread carefully in construing this exclusionary principle lest it swallow all of patent law" because "[a]t some level, all inventions ... embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id.*

In *Alice*, the Supreme Court set forth a two-part test for patent eligibility. *Id.* at 2355. First, the court determines whether the claims at issue are directed towards an abstract idea. *Id*. If so, then the court asks "what else is there in the claims before us?" *Id.* To answer the question, the court considers "the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id.* This second step is the search for an "inventive concept," or some element or combination of elements sufficient to ensure that the claim in practice amounts to "significantly more" than a patent on an ineligible concept. *Id.*; *see also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014).

In determining whether the claims are directed to an abstract idea, the Supreme Court has recognized, that "fundamental economic practice[s]," *Bilski v. Kappos*, 561 U.S. 593, 611 (2010), "method[s] of organizing human activity," *Alice*, 134 S. Ct. at 2356, and mathematical algorithms,

*Gottschalk v. Benson*, 409 U.S. 63, 64 (1972), are abstract ideas. *See also*, *DDR Holdings, LLC*, 773 F.3d at 1256. Courts have also found that processes that can be "performed mentally" or that are "equivalent of human mental work" are directed to abstract ideas. *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed.Cir.2011); *see also Chamberlain Grp., Inc. v. Linear LLC*, 114 F. Supp. 3d 614, 626 (N.D. Ill. 2015). At this step, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016) (citing *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)).

In *McRO* the Federal Circuit unequivocally stated: "We have previously cautioned that courts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims." *Id.* at *7 (citing *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016)). Importantly, the "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention" but this is not "a license to delete all computer-related limitations from a claim and thereby declare it abstract." *Perdiemco, LLC v. Industrack LLC*, No. 2:15-CV-1216-JRG-RSP, 2016 WL 5719697, at *5 (E.D. Tex. Sept. 21, 2016), report and recommendation adopted, No. 2:15-CV-727-JRG, 2016 WL 5475707 (E.D. Tex. Sept. 29, 2016) (quotations and citations omitted). Importantly, claims are not directed to an abstract idea if the claimed subject matter does not preempt the use of the abstract idea on the Internet or on generic computer components performing conventional activities. *Bascom*, 827 F.3d at 1352.

Similarly, claims "purport[ing] to improve the functioning of the computer itself," or "improv[ing] an existing technological process" are not drawn to abstract ideas, *Alice*, 134 S. Ct. at 2358-59; *see also Enfish*, 822 F.3d at 1335. Additionally, the Federal Circuit has recognized

that patent claims are not directed to an abstract idea where "the focus of the claims is on the specific asserted improvement in computer capabilities ..., [rather than] on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish*, 822 F.3d at 1336. "If the claims are not directed to an abstract idea, the inquiry ends. *McRO, Inc. v. Bandai Namco Games Am. Inc.*, supra.

At *Alice* step two, courts determine whether the claims encompass "significantly more" than the abstract idea. At this step, courts also look at whether the claims "merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet" or whether "the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR Holdings*, LLC, 773 F.3d at 1257.

In other words, even if the claims are directed to abstract concepts they may still be patent-eligible when the claim limitations "are not necessary or obvious tools" that pre-empt or preclude the use of other solutions in the technological field. *California Inst. of Tech. v. Hughes Commc'ns Inc.*, 59 F. Supp. 3d 974, 994 (C.D. Cal. 2014). Furthermore, "[t]he inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art." *Bascom*, 827 F.3d at 1350. That is, "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Id.*

### C. Burden of proof of patent invalidity

Patents are entitled to a presumption of validity. *See* 35 U.S.C. § 282. Pursuant to the Patent Act, the party asserting the invalidity of a patent or any claim thereof bears the burden of proof. *Id.* For this reason, a party arguing that a patent claims ineligible subject matter under 35 U.S.C. § 101 must prove this by clear and convincing evidence. *See Microsoft Corp. v. i4i Ltd. P'ship*, 564

U.S. 91, 95 (2011); *see also*, *Wolf v. Capstone Photography, Inc.*, No. 2:13-CV-09573, 2014 WL 7639820, at *5 (C.D. Cal. Oct. 28, 2014) ("[P]rior to claim construction, a patent claim can be found directed towards patent ineligible subject matter if the only plausible reading of the patent must be that there is clear and convincing evidence of ineligibility.") (quotations and citations omitted); *DataTern, Inc. v. Microstrategy, Inc.*, No. CV 11-11970-FDS, 2015 WL 5190715, at *7 (D. Mass. Sept. 4, 2015); *01 Communique Lab., Inc. v. Citrix Sys., Inc.*, 151 F. Supp. 3d 778, 787 (N.D. Ohio 2015); *Front Row Techs., LLC v. NBA Media Ventures, LLC*, No. CIV 10-0433 JB/SCY, 2016 WL 5404094, at *32 (D.N.M. Aug. 30, 2016).

## V.   ARGUMENT

### A.  The Patents-in-Suit are directed to Patent Eligible Subject Matter

Brunswick contends that the Court should dismiss the Complaint pursuant to Rule 12(b)(6) for failure to state a claim because 1) the claims purportedly cannot be meaningfully distinguished from those held patent-ineligible in *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905 (Fed. Cir. 2017); and 2) because SI purportedly failed to allege facts to show plausibility of its patent infringement claims. *See* D.I. No. 10 at p. 10. As discussed below, however, the Patents-in-Suit are directed to improvements in computer-related technology and, as such, are not directed to an abstract idea. As discussed below, however, both arguments are incorrect.

### a)  Step 1: The Asserted Claims are not drawn to an abstract idea

Brunswick incorrectly argues that the Patents-in-Suit are invalid under 35 U.S.C. § 101 because they purportedly fail both prongs of the *Alice* test and that each of the claims is directed to the abstract idea of data recognition and retrieval. *See* D.I. No. 10 at p. 10.  This argument, however, oversimplifies the technology covered by the Patents-in-Suit. Under the two-part test for

determining patent eligibility a court must "first determine whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 134 S.Ct. at 2355. If that threshold determination is met, the court must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id*.

It must be noted that the Patents-in-Suit are not directed to the type of subject matter that has been invalidated by courts under 35 U.S.C. § 101. For instance, claim 1 is not directed to a fundamental economic practice, a method of organizing human activity, or a mathematical algorithm. Moreover, the limitations of the Asserted Claims cannot be performed mentally and are not the "equivalent of human mental work." *See CyberSource Corp.*, 654 F.3d at 1373. Instead, the Patents-in-Suit are directed to solving a problem within computer technology at the time of the invention which cannot be done by a person. As previously noted, the subject matter claimed by the Patents-in-Suit improves the manner in which an electronic device automatically retrieves and decodes information from a symbol that is associated with an object in order for said information to be displayed on the electronic device. *See* '752 patent, 1:65-2:16.

Brunswick contends that all that claim 1 "explains is a way to use a barcode to obtain information in order to access a webpage, consisting of nothing more than a set of basic ideas like capturing, detecting, decoding, sending, receiving, and displaying data" *See* D.I. No. 10 at p. 11. However, such characterization is too broad and oversimplifies the claims since the claims are not directed to any of those actions individually. Such oversimplification omits the combination of steps that allow an electronic device to automatically detect a symbol and decode it into information about an object that is subsequently displayed on the device, as recited in the claims. As noted in *Alice*, describing the claims at such a high level of abstraction and untethered from the

9

language of the claims all but ensures that the exceptions to § 101 swallow the rule. *See Alice*, 134 S.Ct. at 2354 (noting that "we tread carefully in construing this exclusionary principle [of laws of nature, natural phenomena, and abstract ideas] lest it swallow all of patent law").

Furthermore, as explained by the Federal Circuit "the 'directed to' inquiry … cannot simply ask whether the claims involve a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions involves a law of nature and/or natural phenomenon…" *Enfish*, 822 F.3d at 1335. "Rather, the 'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether 'their character as a whole is directed to excluded subject matter.'" *Id*. In *Enfish*, the Federal Circuit also noted that claims are not directed to an abstract idea if "the focus of the claims is on the specific asserted improvement in computer capabilities ..., [rather than] on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id*. at 1336. Applying that test, the Federal Circuit rejected a § 101 challenge because the claims at issue focused on a specific improvement—a particular database technique—in how computers could carry out one of their basic functions of storage and retrieval of data.

Here, the claims do not merely call for a device that captures an image or detects a symbol. Rather, the claims—and particularly claim 1—require an electronic device to detect symbology within an image; send symbology information to the appropriate applications residing on the electronic device for decoding; decode the symbology to obtain a decode string; send the decode string to a server configured to identify one or more objects associated with the symbology; determine the object associated with the symbology using the decode string; and then gather information about that object in order to display it to the user of the electronic device. *See* '752 patent, 3:12-28. Furthermore, the Patents-in-Suit provide for the automatic selection of a scanning

10

application upon recognition of symbology. *Id*. As noted in the Patents-in-Suit, existing portable devices could be enhanced with software applications to enable information retrieval procedures as described in the Patents-in-Suit. *Id*. at 3:50-55. Accordingly, the combination of the aforementioned steps and/or functionalities—as embodied in claim 1 and claims dependent therefrom—resulted in the enhancement or improvement of electronic devices at the time of the invention. In other words, it made the existing electronic devices more dynamic and efficient. Thus, through the performance of the particular steps recited in claim 1, the Patents-in-Suit improve the manner in which an electronic device processes symbology associated with an object and provides information about the object to a user of the device. Therefore, the Patents-in-Suit represent an improvement to computer capabilities and are note directed to an abstract idea.

Brunswick further contends that courts have found similar claims to be patent ineligible. *See* D.I. No. 10 at p. 13. The cases discussed by Brunswick, however, are distinguishable from the case at bar. For example, in *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) the Federal Circuit agreed with the district court that the claims at issue were "drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory" and indicated that the "concept of data collection, recognition, and storage [was] undisputedly well-known […]" since "humans [had] always performed these functions." *Id*. After all, banks had "for some time, reviewed checks, recognized relevant data such as the amount, account number, and identity of account holder, and stored that information in their records." *Id*. As such, the Federal Circuit concluded that the claims were "drawn to the basic concept of data recognition and storage." *Id*. In the case at bar however, the claims are not directed to "functions" that have always been performed by humans or banks as in *Content Extraction*. For example, humans cannot

automatically detect symbology associated with an object within an image, decode the symbology to obtain a decode string, send the decode string to a remote server for processing, receive information about the object from the server based on the decode string of the object and display the information, as recited in claim 1. In other words, unlike banks reviewing checks and storing the information for their records (i.e., data recognition and storage), the claimed steps are not "functions" that have been historically performed by humans. As such, the claims are not directed to an abstract idea as Brunswick contends.

Brunswick also relies on *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322 (Fed. Cir. 2017), cert. denied, 138 S. Ct. 672, 199 L. Ed. 2d 535 (2018) to support its contention that the Patents-in-Suit are purportedly directed to an abstract idea. *See* D.I. 10 at pp. 9-10. In that case the Federal Circuit concluded that the claim at issue was directed to the abstract idea of encoding and decoding image data because it merely claimed a method whereby a user displayed images on a first display, assigned image codes to the images through an interface using a mathematical formula, and then reproduced the image based on the codes. *RecogniCorp*, 855 F.3d at 1326. Particularly, the Federal Circuit noted that "a method whereby a user starts with data, codes that data using 'at least one multiplication operation,' and ends with a new form of data" as required by the claim at issue, was directed to an abstract idea. *Id*. at 1327. Here, however, the claims are not merely directed to encoding data using a multiplication operation in order to obtain a new form of data. Unlike *RecogniCorp*, claim 1 of the Patents-in-Suit is directed to a method that improves the functioning of a computer. As discussed above, thanks to the steps recited in claim 1, the Patents-in-Suit improved the manner in which an electronic device could process symbology associated with an object and provide information about the object to a user of the electronic device. As such, the claims at issue are distinguishable from the claim in *RecogniCorp*.

Lastly, Brunswick relies on *Secured Mail* to argue that the Patents-in-Suit are directed to patent ineligible subject matter.  *See* D.I. 10 at p. 15. In that case all the patents involved methods in which a sender affixes an identifier on the outer surface of a mail object (e.g., envelope or package) and the Federal Circuit agreed with the district court's analysis that the claims were directed to an abstract idea. *See Secured Mail*, 873 F.3d at 907-09. Furthermore, the Federal Circuit noted that the claims were not directed to an improvement in computer functionality because, for example, the claims were not directed to a new barcode format, an improved method of generating or scanning barcodes, or similar improvements in computer functionality and that the claims merely generically provided for the encoding of various data onto a mail object but did not set out how this is to be performed. *Id.* at p. 910. Here, however, the claims do not require affixing an identifier on the outer surface of an envelope or package or merely encoding data onto a mail object; rather the claims set out a method in which information is presented about an object on a portable electronic device after the performance of specific steps. Brunswick argues that claim 1 merely claims a desired result without describing any specific roadmap for doing so, *see* D.I. 10 at p. 16, but claim 1 requires the performance of particular steps before information is displayed on an electronic device; steps which as discussed above, result in the improvement and enhancement of portable devices at the time of the invention. As such *Secured Mail* is distinguishable from the case at bar.

Brunswick further argues that dependent claim 6 is also directed to the abstract idea of data recognition and retrieval; and that the inventor failed to disclose any details of how the process described in claim 6 was accomplished in a non-conventional way. *See* D.I. No. 10 at p. 16. Brunswick does not explain how the steps recited in claim 6, in combination with the steps recited in the claims from which it depends on (i.e., claims 1 and 5), are merely conventional steps. In any

event, such argument fails to consider that the elements of each claim both individually and as an ordered combination must be considered to determine whether the claims recite an invention that is not merely routine or conventional. *See DDR Holdings*, 773 F.3d at 1259. Here, the ordered combination of the steps in claim 1, as further limited by the steps in claim 6, requires the performance of steps, which as discussed above, result in the improvement and enhancement of portable devices at the time of the invention. Thus, claim 6 is not directed to an abstract idea.

Since claim 1 focuses on a specific improvement to computer capabilities the Patents-in-Suit are not directed to an abstract idea as Brunswick contends. *See Enfish*, 822 F.3d at 1335-39 (In which the Court asked whether the focus of the claims is on the specific asserted improvement in computer capabilities or instead on a process that qualifies as an "abstract idea" for which computers are invoked merely as a tool.) As such, Brunswick contention that the Patents-in-Suit are directed to an abstract idea must be rejected.

**b)  Step 2: Claim 1 recites an inventive concept**

In addition, Brunswick's Motion to Dismiss fails because the claims recite an inventive concept. As previously noted, at this step courts also look at whether the claims "merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet" or whether "the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR Holdings, LLC*, 773 F.3d at 1257.

The claims, and in particular claim 1, are not drawn to a business practice known from the pre-Internet world along with a requirement to perform it on the Internet. On the contrary, claim 1 represent an improvement to computer capabilities, as discussed above. Brunswick argues that each step recited in claim 1 "is described only at a high level of generality as 'capturing a digital

image,' 'detecting' a barcode, 'decoding [the barcode] . . . to obtain a decode string,' 'sending the decode string to a remote server for processing,' 'receiving information . . . from the remote server,' and 'displaying the information.'" However, this does not represent "a license to delete all computer-related limitations from a claim and thereby declare it abstract." *Perdiemco, LLC v. Industrack LLC*, supra (quotations and citations omitted). Brunswick forgets that the *Alice* Court advised that it "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Alice*, 134 S.Ct. at 2354. Under Brunswick's overbroad and general interpretation, nearly all inventions would be invalid under 35 U.S.C. § 101.

Furthermore, Brunswick's analysis is improper because it focuses on the individual components recited in claim 1 to reach the conclusion that the claimed components do not improve the functioning of the computer itself. *See* D.I. 10 at p. 18. In particular, Brunswick's focus on individual components fails to consider the elements of the claim as an ordered combination. Individual elements when viewed on their own may not appear to add significantly more, but when viewed in combination may amount to significantly more than any purported abstract idea. *See Alice*, 134 S.Ct. at 2355. Viewed as a whole or as an ordered combination, claim 1 recites a "specific improvement to the way computers operate". *Enfish*, 822 F.3d at 1336. As discussed above, through the performance of the particular steps recited in claim 1, the Patents-in-Suit improve the manner in which an electronic device processes symbology associated with an object and provides information about the object to a user of the device. Thus, contrary to Brunswick's contention the Patents-in-Suit improve the functioning of a computer itself.

As noted by the Federal Circuit in *Bascom*, the inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. *See Bascom*, 827 F.3d at 1350. The claims in that case were directed to filtering internet content using a remote,

customizable filter. The Federal Circuit agreed with the district court that that filtering content was an abstract idea because it was a longstanding, well-known method of organizing human behavior. *Id*. at 1348. However, the Federal Circuit found the claims eligible under Step 2, stating that they recited a non-conventional and non-generic ordered combination of known, conventional pieces. *Id*. at 1350. The Federal Circuit characterized the inventive concept as "the installation of a filtering tool at a specific location, remote from the end-users, with customizable filtering features specific to each end user." *Id*. In particular, Federal Circuit noted that "by taking a prior art filter solution […] and making it more dynamic and efficient […], the claimed invention represented a 'software-based invention[ ] that improve[s] the performance of the computer system itself.'" *Id*. at 1351. Here, Brunswick indicates that the point of novelty of the Patents-in-Suit is the result of providing a convenient way for scanning barcodes. *See* D.I. No. 10 at p. 19. This is false. As explained above, through the performance of the particular steps recited in claim 1, the Patents-in-Suit improve the manner in which an electronic device processes symbology associated with an object and provides information about the object to a user of the device, thus making existing electronic devices at the time of the invention more dynamic and efficient. Therefore, as in *Bascom*, the specific method recited in claim 1 cannot be said to be conventional or generic.

Brunswick also argues in conclusory fashion that the remaining claims of the Patents-in-Suit are also directed to the abstract idea of data recognition and retrieval. *See* D.I. 10 at pp. 20-22. But aside from providing legal conclusions devoid of any support, Brunswick does not show by clear and convincing evidence that all remaining claims are directed to an abstract idea. *See Microsoft Corp.*, 564 U.S. at 95; *see also*, *Wolf*, 2014 WL 7639820, at *5 ("[P]rior to claim construction, a patent claim can be found directed towards patent ineligible subject matter if the only plausible reading of the patent must be that there is clear and convincing evidence of

ineligibility.") Thus, Brunswick's argument as to the remaining claims must be stricken from their Motion to Dismiss for inadequate pleading.

Brunswick further argues that the Patents-in-Suit risk preempting "*all* automated methods or systems for recognizing a pattern [...] and retrieving data based on that." *See* D.I. 10 at p. 22. Brunswick's argument exaggerates the scope of the Patents-in-Suit and has no basis in reality. The Patents-in-Suit would only preempt someone in the United States from performing *each and every step* of the claimed method. After all that is the right that was granted under the patent statute. *See* 35 U.S.C. § 271. It would not preempt all methods of data retrieval or someone who only scanned or decoded a pattern, or someone who merely displayed information on a display device. In *Bascom* the Federal Circuit concluded that the claims at issue did not preempt all ways of filtering content on the Internet; rather, they recited a specific, discrete implementation of the abstract idea of filtering content. *See Bascom*, 827 F.3d at 1350. In particular, there were no preemption concerns because the patent described how its particular arrangement of elements was technical improvement over prior art ways of filtering such content. *Id*. As explained above, through the performance of the particular method recited in claim 1, the Patents-in-Suit improve the manner in which an electronic device processes symbology associated with an object and provides information about the object to a user of the device, thus making existing electronic devices at the time of the invention more dynamic and efficient. Thus, construed in favor of SI as they must be in this procedural posture, the claims of the Patents-in-Suit do not preempt the use of any purported abstract idea on generic computer components performing conventional activities. *See Bascom*, 827 F.3d at 1352.

In sum, Brunswick did not show by clear and convincing evidence that the Patents-in-Suit are invalid; and since the claims are drawn to a patent-eligible inventive concept, Brunswick's Motion to Dismiss must be denied.

## B.  SI plead sufficient detail to provide notice of its infringement allegations

SI's Complaint explains and provides examples of how Brunswick infringes each limitation in claim 1 of the Patents-in-Suit. *See* Dkt. No. 1 at ¶¶ 23-28, 37-42 and 51-56. Specifically, the complaint states that Defendant infringes the Patents-in-Suit by using and/or incorporating QR codes into exercise equipment in a manner covered by one or more claims of the Patents-in-Suit. *Id*. For example, at least through internal testing, used or incorporated QR codes into exercise equipment, associating such QR codes with products and/or services. One specific example of Defendant's activity involves the use of QR codes on exercise equipment associated with Defendant's products/services. *Id*.

The Complaint further asserts that at least through internal testing, Defendant has used a digital image capturing device of a portable electronic device, such as the camera component of a smart phone for example, to capture a digital image of the QR code associated with its products/services and exercise equipment. Defendant's capture of the digital image is processed by scanning technology loaded onto the portable electronic device. *Id*. The scanning technology detects symbology (for example, a pattern within the QR code) associated with an object (for example, the product or service associated with the QR code). *Id*. The scanning technology is then used to decode the symbology to obtain a decode string. *Id*. The decode string is sent to a remote server for further processing.  Based on the decode string, the remote server sends information associated with the QR code, which is received by the user of the portable electronic device and displayed on a display associated with the portable electronic device. *Id*. Additionally, the

complaint states that Defendant uses a visual detection system (e.g., a smart phone camera and QR code scanning application) that is configured to automatically detect the symbology (e.g., the symbology is automatically detected when scanned by the visual detection system). *Id*.

Therefore, SI has pled enough facts to allow this Court to draw the reasonable inference that Brunswick infringes the Patents-in-Suit. Brunswick argues that SI has not pleaded sufficient detail to provide notice of its infringement allegations with respect to claim 6. *See* D.I. 10 at p. 22. Such argument, however, is moot in view of SI's Amended Complaint. Moreover, the Amended Complaint will include additional allegations which taken as true, would directly affect the district court's patent eligibility analysis and prevent the court from resolving the eligibility question as a matter of law. *See Aatrix Software*, 882 F.3d at 1125–27 ("We have held that patentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis under Rule 12(b)(6).") For this reason, the Motion to Dismiss should also be denied.

## VI.    CONCLUSION

The Court should deny the Motion to Dismiss because the Patents-in-Suit are not directed to an abstract idea, but rather represent an improvement to computer capabilities. Namely, improving the manner in which an electronic device processes symbology associated with an object through the performance of particular steps in order to provide information about the object to a user of the device, thus making existing electronic devices at the time of the invention more dynamic and efficient.

Thus, for the reasons set forth above, the Motion to Dismiss should be denied.

Dated: May 29, 2018

Respectfully Submitted,

STAMOULIS & WEINBLATT LLC
/s/Stamatios Stamoulis
Stamatios Stamoulis (#4606)
stamoulis@swdelaw.com
Richard C. Weinblatt (#5080)
weinblatt@swdelaw.com
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, Delaware 19809
Telephone: (302) 999-1540

Eugenio J. Torres-Oyola
USDC No. 215505
**Ferraiuoli LLC**
221 Plaza, 5th Floor
221 Ponce de León Avenue
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: etorres@ferraiuoli.com

Jean G. Vidal Font
USDC No. 227811
**Ferraiuoli LLC**
221 Plaza, 5th Floor
221 Ponce de León Avenue
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: jvidal@ferraiuoli.com

**ATTORNEYS FOR PLAINTIFF
SYMBOLOGY INNOVATIONS LLC**