IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SYMBOLOGY INNOVATIONS LLC,
     Plaintiff,

v.

BRUNSWICK CORPORATION,
d/b/a LIFE FITNESS,
     Defendant.

C.A. No. 1:18-cv-565-GMS

PATENT CASE

**JURY TRIAL DEMANDED**

**DEFENDANT BRUNSWICK CORPORATION'S
OPENING BRIEF IN SUPPORT OF ITS RULE 12(b)(6) MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

FISH & RICHARDSON P.C.
Jeremy D. Anderson (No. 4515)
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19801
(302) 658-5070 (Telephone)
(302) 652-0607 (Facsimile)
janderson@fr.com

Neil J. McNabnay
David B. Conrad
Ricardo J. Bonilla
Theresa M. Dawson
Rodeen Talebi
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
mcnabnay@fr.com
conrad@fr.com
rbonilla@fr.com
tdawson@fr.com
talebi@fr.com

ATTORNEYS FOR DEFENDANT
BRUNSWICK CORPORATION,
D/B/A LIFE FITNESS

# TABLE OF CONTENTS

**Page(s)**

I.    STAGE AND NATURE OF PROCEEDINGS ........................................................1

II.   SUMMARY OF THE ARGUMENT ..................................................................2

III.  STATEMENT OF THE FACTS .........................................................................2

IV.   LEGAL STANDARDS .....................................................................................4

    A.   Legal Standard for Dismissal Pursuant to Rule 12(b)(6). ...........................4

    B.   Patentability is a Threshold Legal Issue. ....................................................5

    C.   The Law of 35 U.S.C. § 101. .....................................................................5

V.    ARGUMENT .....................................................................................................6

    A.   The Patents-in-Suit are Invalid under 35 U.S.C. § 101. .............................7

        1.   *Alice* Step 1: Claim 1 of the '752 Patent is directed to the abstract idea of data recognition and retrieval. .........................7

        2.   *Alice* Step 2: Claim 1 of the '752 Patent contains no inventive concept sufficient to transform the abstract idea into patent-eligible matter. ...................................................12

        3.   The remaining claims fail both steps of the *Alice* test. .................14

    B.   The Disproportionate Risk of Preemption Confirms that the Claims Are Abstract............................................................................17

VI.   CONCLUSION...................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
      134 S. Ct. 2347 (2014) ................................................................................ *passim*

*Ashcroft v. Iqbal,*
      556 U.S. 662 (2009) ........................................................................................... 4

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.,*
      687 F.3d 1266 (Fed. Cir. 2012) ................................................................ 5, 14, 15

*Bilski v. Kappos,*
      561 U.S. 593 (2010) .................................................................................... 5, 6, 7

*buySAFE, Inc. v. Google, Inc.,*
      765 F.3d 1350 (Fed. Cir. 2014) ....................................................................... 14

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.,*
      21 F. Supp. 3d 758 (E.D. Tex. 2014) ............................................................... 16

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
      776 F.3d 1343 (Fed. Cir. 2014) ............................................................ 7, 9, 11, 14

*Cuvillier v. Sullivan,*
      503 F.3d 397 (5th Cir. 2007) ............................................................................. 5

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.,*
      558 F. App'x 988 (Fed. Cir. 2014) ................................................................... 11

*CyberSource Corp. v. Retail Decisions, Inc.,*
      654 F.3d 1366 (Fed. Cir. 2011) ......................................................................... 6

*DDR Holdings, LLC v. Hotels.com, L.P.,*
      773 F.3d 1245 (Fed. Cir. 2014) ....................................................................... 13

*Diamond v. Chakrabarty,*
      447 U.S. 303 (1980) ........................................................................................... 5

*Diamond v. Diehr,*
      450 U.S. 175 (1981) ........................................................................................... 6

*Enfish, LLC v. Microsoft Corp.,*
      822 F.3d 1327 (Fed. Cir. 2016) ....................................................................... 13

*Fort Props., Inc. v. Am. Master Lease LLC,*
      671 F.3d 1317 (Fed. Cir. 2012) ......................................................................... 6

*Gibbs v. Coupe,*
      No. CV 14-790-SLR, 2015 WL 6870033 (D. Del. Nov. 6, 2015) ........................... 4

*Gottschalk v. Benson,*
      409 U.S. 63 (1972) ............................................................................................. 5

*Intellectual Ventures I LL v. Capital One Bank U.S.A.*,
    792 F.3d 1363 (Fed. Cir. 2015)...................................................................14

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017)...................................................................10

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015)..............................................................12, 15

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
    66 F. Supp. 3d 829 (E.D. Tex. 2014)...........................................................17

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012)..................................................................................6

*Morales v. Square, Inc.*,
    75 F. Supp. 3d. 716 (W.D. Tex. 2014), *aff'd*, 621 F. App'x 660 (Fed. Cir.
    2015), *cert. denied*, 136 S. Ct. 1461 (2016)...............................................8

*Parker v. Flook*,
    437 U.S. 584 (1978)......................................................................................6

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
    No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8, 2017) .............7

*Recognicorp, LLC v. Nintendo Co., Ltd.*,
    855 F.3d 1322 (Fed. Cir. 2017)........................................................10, 11, 14

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017)............................................................ *passim*

*In re TLI Commc'ns LLC Patent Litigation*,
    823 F.3d 607 (Fed. Cir. 2016).....................................................................13

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)...............................5, 8, 12

*Victaulic Co. v. Tieman*,
    499 F.3d 227 (3rd Cir. 2007) .........................................................................4

**Statutes**

35 U.S.C. § 101............................................................................... *passim*

**Other Authorities**

Rule 12(b)(6)................................................................................... *passim*

## I.    STAGE AND NATURE OF PROCEEDINGS

On April 13, 2018, Symbology filed this lawsuit accusing Brunswick of infringing U.S.

Patent Nos. 8,424,752 (the "'752 Patent"); 8,651,369 (the "'369 Patent"); and 8,936,190 (the

"'190 Patent") (collectively, the "Patents-in-Suit"). After Brunswick filed a motion to dismiss the

Complaint under Rule 12(b)(6) (D.I. 6), Symbology filed its First Amended Complaint (D.I. 16

("Amd. Compl.")), and now accuses Brunswick of infringing the Patents-in-Suit[1] by

Brunswick's alleged "using and/or incorporating" a Quick Response Code ("QR code") into

exercise equipment. Amd. Compl. ¶¶ 24, 37, 50.

Likely because Claim 1 is written in such broad terms, Symbology's original Complaint

alleged infringement of "at least Claim 6" of the Patents-in-Suit, which requires additional

limitations not found in Claim 1. Symbology alleged that these limitations were met because

Brunswick purportedly "uses a visual detection system (e.g., a smartphone camera and QR code

scanning application) that is configured to alert the user when an image containing symbology

has been detected (e.g., once the QR code is scanned the user receives notification asking user

whether to open Defendant's website)." *See*, e.g., D.I. 1 ¶¶ 29, 43, 57. As Brunswick pointed out

in its first motion to dismiss, these allegations were facially unreasonable because Claim 6

requires "alerting the user when an image has been detected [and] asking the user if decoding of

the symbology is desired" ('752 Patent at cl. 6), not detecting and decoding the barcode, and then

asking the user "whether to open a website." Only after being confronted with Brunswick's first

motion to dismiss, which demonstrated that Brunswick did not practice Claim 6, did Symbology

assert Claim 1, which does not include the additional limitations in Claim 6.

---

[1] In its First Amended Complaint, Symbology asserts that Brunswick: "has infringed and
continues to infringe one or more claims, including at least Claim 1, of the '752 Patent" (Amd.
Compl. ¶ 24); "has infringed and continues to infringe one or more claims, including at least

## II.     SUMMARY OF THE ARGUMENT

Brunswick requests that the Court dismiss this case because the Patents-in-Suit do not embrace patent-eligible subject matter. The claims of the Patents-in-Suit are directed to the abstract idea of data recognition and retrieval, and none of the claims recites any specific non-conventional hardware or software. In *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905 (Fed. Cir. 2017), the Federal Circuit held claims directed to decoding a QR code like those at issue here invalid under both *Alice* steps. The claims of the Patents-in-Suit cannot be meaningfully distinguished from the *Secured Mail* claims and are thus invalid for the same reasons.

Resolving this issue does not require discovery or formal claim construction. To avoid waste of judicial and party resources unnecessarily litigating invalid patents, Brunswick thus requests that the Court dismiss the First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## III.    STATEMENT OF THE FACTS

The Patents-in-Suit are entitled "System and Method for Presenting Information about an Object on a Portable Electronic Device" and share the same Abstract and the same specification. They are directed to "enabling a portable electronic device to retrieve information about an object when the object's symbology, e.g., a barcode, is detected." '752 Patent at Abstract; '369 Patent at Abstract; and '190 Patent at Abstract.

Claim 1 of the '752 Patent, set forth below, is representative of the claims in the Patents-in-Suit:

---

Claim 1, of the '369 Patent" (*id.* ¶ 37); and "has infringed and continues to infringe one or more claims, including at least Claim 1, of the '190 Patent" (*id.* ¶ 50).

1. A method comprising:

capturing a digital image using a digital image capturing device that is part of a portable electronic device;

detecting symbology associated with an object within the digital image using a portable electronic device;

decoding the symbology to obtain a decode string using one or more visual detection applications residing on the portable electronic device;

sending the decode string to a remote server for processing;

receiving information about the object from the remote server wherein the information is based on the decode string of the object;

displaying the information on a display device associated with the portable electronic device.

'752 Patent at cl. 1.

This claim can be broken down into six main steps: (1) <u>capturing</u> an image with a camera or a scanner on a "portable electronic device" (e.g., taking a photograph or scanning an image with a smartphone); (2) <u>detecting</u> a symbology (e.g., recognizing a barcode in the captured image); (3) <u>decoding</u> the symbology to obtain a "decode string" (e.g., reading information from the barcode); (4) <u>sending</u> the "decode string" to a "server" for processing (e.g., requesting a webpage based on the information obtained from the barcode); (5) <u>receiving</u> information from the "server" in response (e.g., receiving the contents of the webpage ); and (6) <u>displaying</u> the information received on the portable electronic device (e.g., displaying a webpage). Put simply, these steps are directed to recognizing and retrieving information associated with a pattern.

The applicant made clear through his own language in the specification that the components and processes for carrying out the claimed method were conventional. For example, the claimed "portable electronic device" can be virtually any mobile device capable of taking a photograph or scanning an image. *Id*. at 1:58-61 ("Examples of the portable electronic devices

that contain both applications and imaging systems include Apple Computer's IPhone, Google's Droid, and various mobile devices from Motorola"); *id.* at 2:57-61 ("Using any applicable visual detection device (e.g., a camera, scanner, or other device) on the portable electronic device, the user may select an object by scanning or capturing an image of symbology (e.g., barcodes) associated with the object."). The applicant further acknowledged that various programs and applications operable on a portable electronic device to scan and decode a barcode were available in the prior art. *Id.* at 3:29-33 ("Examples of applications that allow scanning include Neomedia's Neo Reader, Microsoft's Smart Tags, Android's Shop Savvy, Red Laser, ScanBuy, etc."). According to the Patents-in-Suit, once a barcode is decoded (using any of these existing applications), the "decode string" (i.e., the information obtained from the barcode) is then "sent" to a "remote server" to retrieve information (e.g., webpage content) that is then displayed on the portable electronic device. *Id.* at 3:21–28.

## IV.   LEGAL STANDARDS

### A.   Legal Standard for Dismissal Pursuant to Rule 12(b)(6).

Under Rule 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint "must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3rd Cir. 2007) (citation omitted). In deciding a Rule 12(b)(6) motion, courts consider documents attached to or incorporated into the complaint as well as facts alleged in the complaint. *Gibbs v. Coupe*, No. CV 14-790-SLR, 2015 WL 6870033, at *1 (D. Del. Nov. 6, 2015) (citation omitted). Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal

4

conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted).

### B.     Patentability is a Threshold Legal Issue.

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718–19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

### C.     The Law of 35 U.S.C. § 101.

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. Also, the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and ***abstract ideas***." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) (emphasis added). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611–12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-

ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014).

Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive

concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent

in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.*

(internal quotations and citations omitted).

Transformation into a patent-eligible application requires "more than simply stating the

abstract idea while adding the words 'apply it.'" *Id*. at 2357 (quoting *Mayo Collaborative Servs.

v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Indeed, if a claim could be performed

in the human mind, or by a human using pen and paper, it is not patent-eligible. *CyberSource

Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). Also, a claim is not

meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such

as identifying a relevant audience, category of use, field of use, or technological environment.

*Mayo*, 132 S. Ct. at 1297–98, 1300–01; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175,

191–92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply

appending conventional steps, specified at a high level of generality, to laws of nature, natural

phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable."

*Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317,

1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits

on the claim's scope.").

## V.     ARGUMENT

The Court should dismiss Symbology's First Amended Complaint pursuant to Rule

12(b)(6) for failure to state a claim. Symbology's claims, which Symbology asserts against

decoding a QR code, cannot be meaningfully distinguished from those held patent-ineligible in

*Secured Mail* and other cases and should therefore be dismissed on the same grounds.

### A.      The Patents-in-Suit are Invalid under 35 U.S.C. § 101.

Symbology's First Amended Complaint should be dismissed. The claims of the Patents-in-Suit are invalid under 35 U.S.C. § 101 because they fail both prongs of the *Alice* test. Each of the claims is directed to the abstract idea of data recognition and retrieval. Abstract ideas are not eligible for patenting. None of the claims contains an "'inventive concept' . . . sufficient to ensure that the patent in practice amounts to ***significantly more*** than a patent upon the ineligible concept itself." *See Alice*, 134 S. Ct. at 2355 (emphasis added). Because Symbology has failed to state a claim upon which relief may be granted, Brunswick respectfully requests that the Court grant its motion and dismiss this case with prejudice. Fed. R. Civ. P. 12(b)(6).

### 1.      *Alice* Step 1: Claim 1 of the '752 Patent is directed to the abstract idea of data recognition and retrieval.

In determining patent eligibility under § 101, the Court must first determine whether the claims are directed to an abstract idea. *Alice*, 134 S. Ct. at 2355. Under any plausible reading, the claims of the Patents-in-Suit are directed to an unpatentable, abstract idea because they claim nothing more than the "longstanding," "routine," and "conventional" concept of data recognition and retrieval. *See Alice*, 134 S. Ct. at 2356-59; *Bilski*, 561 U.S. at 611.

Claim 1 of the '752 Patent is representative of the claims.[2] *See, e.g.*, *Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8–9 (E.D. Tex. Mar. 8, 2017) (invalidating 974 claims after analyzing only a few "representative claims" where the other claims were "substantially similar" and "linked to the same abstract idea."). To assess whether this claim is directed to an abstract idea, the Court must look past the claim language for the purpose of the claim to determine what the invention is trying to achieve.

---

[2] Where claims are "substantially similar and linked to the same abstract idea," courts may look to representative claims in a § 101 analysis. *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

*Morales v. Square, Inc.*, 75 F. Supp. 3d. 716, 725 (W.D. Tex. 2014), *aff'd*, 621 F. App'x 660

(Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 1461 (2016). All Claim 1 of the '752 Patent covers is a

way to use a barcode to obtain information in order to access a webpage, consisting of nothing

more than a set of basic ideas like capturing, detecting, decoding, sending, receiving, and

displaying data:

| Claim Language | Claimed Idea |
|---|---|
| A method comprising: | |
| capturing a digital image using a digital image capturing device that is part of a portable electronic device; | capturing data |
| detecting symbology associated with an object within the digital image using a portable electronic device; | detecting data |
| decoding the symbology to obtain a decode string using one or more visual detection applications residing on the portable electronic device; | decoding data |
| sending the decode string to a remote server for processing; | sending data |
| receiving information about the object from the remote server wherein the information is based on the decode string of the object; | receiving data |
| displaying the information on a display device associated with the portable electronic device. | displaying data |

At a high level, this claim describes the most generic functional steps of a standard

computer (i.e., capturing, detecting, decoding, sending, receiving, and displaying data). Such a

broad concept is not patent eligible because it "recite[s] an abstraction—an idea, having no

particular concrete or tangible form." *Ultramercial*, 772 F.3d at 715. That the claim purports to

implement the steps with conventional components like a "portable electronic device," a "remote

server," a "display device," and generic "visual detection applications" does not make it any less

abstract.

8

The specification (shared by the Patents-in-Suit) admits that barcode scanning and decoding programs were prevalent at the time of the invention. '752 Patent at 3:29-36. Indeed, the claims implement this prior-art technology to carry out the steps of capturing, detecting, decoding, and retrieving information from a server. Claim 1 of the '752 Patent does no more than use existing technology to recognize an image, decode the image, then do something based upon the decoded information. It is thus directed to the abstract idea of data recognition and retrieval.

Courts have found similar patent claims to be ineligible. In *Content Extraction*, the claims generally recited "a method of 1) extracting data from hard copy documents using an automated digitizing unit such as a scanner, 2) recognizing specific information from the extracted data, and 3) storing that information in a memory." *Content Extraction*, 776 F.3d at 1345. The claimed method "could be performed by software on an automated teller machine (ATM) that recognizes information written on a scanned check, such as the check's amount, and populates certain data fields with that information in a computer's memory." *Id.* The Federal Circuit concluded in *Alice*'s first step that the claims were "drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory"; or, put simply: "data recognition and storage." *Id.* at 1347. In rejecting the plaintiff's argument that the claims were not abstract because they required the use of a scanner, the Federal Circuit likened the claims to those found abstract in *Alice*, which "also required a computer that processed streams of bits." *Id.* Like the *Content Extraction* claims, Claim 1 of the '752 Patent is abstract because it simply decodes an image to obtain information and then retrieves data from a server based on that information. The claims in *Content Extraction* were directed to data recognition and *storage*, whereas the Patents-in-Suit are directed to data

recognition and *retrieval*—the former claims stored the recognized data, while the latter claims retrieve additional data based on the recognized data.

In *Recognicorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322 (Fed. Cir. 2017), the Federal Circuit found the patent claim at issue to be directed toward the abstract idea of "encoding and decoding image data." *Recognicorp*, 855 F.3d at 1324. The claim at issue in *Recognicorp* recited:

> A method for creating a composite image, comprising:
>
> displaying facial feature images on a first area of a first display via a first device associated with the first display, wherein the facial feature images are associated with facial feature element codes;
>
> selecting a facial feature image from the first area of the first display via a user interface associated with the first device,
>
> wherein the first device incorporates the selected facial feature image into a composite image on a second area of the first display, wherein the composite image is associated with a composite facial image code having at least a facial feature element code and wherein the composite facial image code is derived by performing at least one multiplication operation on a facial code using one or more code factors as input parameters to the multiplication operation; and
>
> reproducing the composite image on a second display based on the composite facial image code.

*Id.* The Federal Circuit described the claim as a "method whereby a user displays images on a first display, assigns image codes to the images through an interface using a mathematical formula, and then reproduces the image based on the codes." *Id.* at 1326. The Federal Circuit found that this method reflected "standard encoding and decoding." *Id.*

The Federal Circuit then explained that encoding and decoding data is "an abstract concept long utilized to transmit information." *Id.* (citing *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340–41 (Fed. Cir. 2017) (organizing, displaying, and manipulating data encoded for human- and machine-readability is directed to an abstract concept)). The court provided several examples of long-utilized methods of encoding and

decoding of data to transmit information: "Morse code, ordering food at a fast food restaurant via a numbering system, and Paul Revere's 'one if by land, two if by sea' signaling system all exemplify encoding at one end and decoding at the other end." *Id.* Claim 1 of the '752 Patent likewise simply decodes an image to obtain information, an abstract concept.

Additionally, in *Secured Mail*, the Federal Circuit found claims directed to encoding and decoding a QR code invalid under both *Alice* steps. 873 F.3d 905. The *Secured Mail* claims "provide[d] a method whereby a barcode is generated, affixed to a mail object, and sent through the mail system [and t]hen, upon receipt, the barcode is scanned, and data corresponding to the sender is sent to the recipient over the network and displayed on the recipient's device." *Id*. at 910–11. The Federal Circuit found that "each step of the process is directed to the abstract process of communicating information about a mail object using a personalized marking." *Id.* at 911. And because the claims were "non-specific and lack[ed] technical detail," utilizing "well known" technologies and generic hardware, the Federal Circuit concluded that the claims lacked an inventive concept. *Id*. at 912.

The idea underlying Claim 1 of the '752 Patent is just as abstract as that of the *Content Extraction*, *Recognicorp*, and *Secured Mail* claims. Claim 1 of the '752 Patent does not include any specific limitations or steps regarding extracting data or decoding the data. Rather, all of the steps required to carry out the method are directed to the generic, conventional ideas of recognizing an image, decoding the image, and then doing something based upon the decoded information. *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc*., 558 F. App'x 988, 992 (Fed. Cir. 2014) (finding claim directed to "the well-known concept of categorical data storage, i.e., the idea of collecting information in classified form, then separating and transmitting that information according to its classification, is an abstract idea that is not patent-eligible"). That

Claim 1 of the '752 Patent sends and receives the decoded information over a network does not

make it any less abstract. *See, e.g.*, *Ultramercial*, 772 F.3d at 716 (noting that "the use of the

Internet is not sufficient to save otherwise abstract claims from ineligibility under § 101")

(citation omitted).

By only claiming the desired result—recognizing and retrieving information associated

with a pattern like a barcode—without describing any specific roadmap for doing so, Claim 1 of

the '752 Patent falls short of claiming eligible subject matter under § 101. *See Internet Patents*

*Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015); *Secured Mail*, 873 F.3d at

910–11.

> **2.** ***Alice* Step 2: Claim 1 of the '752 Patent contains no inventive concept**
> **sufficient to transform the abstract idea into patent-eligible matter.**

Because Claim 1 of the '752 Patent is directed to an abstract idea, the Court must next

determine whether it contains an "inventive concept sufficient to transform the claimed abstract

idea into a patent eligible application." *Alice*, 134 S. Ct. at 2357 (internal quotations omitted). To

pass this test, Claim 1 of the '752 Patent "must include additional features" that "must be more

than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quotation

omitted). Here, Claim 1 of the '752 Patent is broadly generic and does not contain meaningful

limitations that would restrict it to a non-routine, specific application of the abstract idea.

Each of the steps recited in Claim 1 of the '752 Patent is described only at a high level of

generality as "capturing a digital image," "detecting" a barcode, "decoding [the barcode] . . . to

obtain a decode string," "sending the decode string to a remote server for processing," "receiving

information . . . from the remote server," and "displaying the information." To accomplish these

steps, Claim 1 of the '752 Patent recites the use of a "portable electronic device," "visual

detection applications," and a "remote server." But the claimed "portable electronic device" can

be virtually any device capable of taking a photograph ('752 Patent at 1:58–61), the "visual detection applications" can be a variety of off-the-shelf applications that users have installed on their smartphones (*id*. at 3:29-33), and the claimed "server" is implemented using generic hardware (*id*. at 9:65-10:1) to perform generic website functions (*id*. at 5:33-42).

The applicant's own characterizations demonstrate that the claimed components do not "improve the functioning of the computer itself," *Alice*, 134 S. Ct. at 2359, for example by disclosing an "improved, particularized method of digital data compression," *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014), or improving "the way a computer stores and retrieves data in memory," *Enfish, LLC v. Microsoft Corp*., 822 F.3d 1327, 1339 (Fed. Cir. 2016). For example, in *Enfish*, the Federal Circuit distinguished the claims from others that "simply add[ed] conventional computer components to well-known business practices," *Id*. at 1338, holding instead that "they [we]re directed to a specific improvement to the way computers operate," *Id.* at 1336. In particular, the unconventional structure of the database resulted in "increased flexibility, faster search times, and smaller memory requirements." *Id.* at 1337. Unlike *Enfish*, nothing in Claim 1 of the '752 Patent shows any unconventional methodology that would amount to a "specific improvement to the way computers operate." Therefore, the focus of the Patents-in-Suit is not "on [a] specific asserted improvement in computer capabilities" but instead "on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id.* at 1336.

There is simply nothing "inventive" about using a known process (i.e., decoding a barcode) to access a website. *See Secured Mail*, 873 F.3d at 912. Moreover, the abstract functional descriptions in Claim 1 of the '752 Patent are devoid of any technical explanation as to how to implement the purported invention in an inventive way. *See In re TLI Commc'ns LLC*

13

*Patent Litigation*, 823 F.3d 607, 615 (Fed. Cir. 2016) (claims failed *Alice*'s step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention"). Similar to the invalidated claim in *Recognicorp*, nothing in Claim 1 of the '752 Patent "'transforms' the abstract idea of . . . decoding," i.e., recognizing information, "into patent-eligible subject matter." 855 F.3d at 1328 (citing *Alice*, 134 S. Ct. at 2357).

Courts have repeatedly held that the presence of generic hardware and software like the kind recited in Claim 1 of the '752 Patent does not make an otherwise abstract idea patent-eligible. *See, e.g.*, *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Content Extraction*, 776 F.3d at 1348 ("At most, [the] claims attempt to limit the abstract idea of recognizing and storing information from hard copy documents using a scanner and a computer to a particular technological environment. Such a limitation has been held insufficient to save a claim in this context."); *Bancorp*, 687 F.3d at 1276–77. In addition, an "abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as [mobile services]." *Intellectual Ventures I LL v. Capital One Bank U.S.A.*, 792 F.3d 1363, 1366 (Fed. Cir. 2015).

Because Claim 1 is altogether devoid of any "inventive concept," it is patent-ineligible under § 101. *See Alice*, 134 S. Ct. at 2359–60.

### 3. The remaining claims fail both steps of the *Alice* test.

The remaining claims of the Patents-in-Suit relate to the same abstract concept of data recognition and retrieval. Specifically, each of the other independent claims refers only to standard computing means for decoding data. For example, the claims describe a "computer application" comprising "logic" ('752 Patent at cl. 17; '369 Patent at cl. 17), or a "symbology

management application" ('752 Patent at cl. 24; '369 Patent at cl. 24; '190 Patent at cl. 20), to perform each of the steps in Claim 1 of the '752 Patent. Other claims replace the terms "object within digital image" with "digital image" ('369 Patent, cl. 1; '190 Patent at cl. 1) and "electronic device" with "portable electronic device" ('190 Patent at cl. 17). These claims are thus indistinguishable from Claim 1 of the '752 Patent.

Some of the dependent claims recite limitations for: (1) running visual detection applications in the background ('752 Patent (cls. 4, 25), '369 Patent (cls. 4, 25), and '190 Patent (cl. 4)); configuring visual detection applications to automatically detect barcodes ('752 Patent (cl. 5), '369 Patent (cl. 5), and '190 Patent (cl. 5)); and (3) analyzing the decode string and selecting appropriate application to decode ('752 Patent (cl. 9), '369 Patent (cl. 9), and '190 Patent (cl. 9)). The purported problem the applicant wanted to resolve was to provide to users a convenient way to select "an appropriate" scanning/decoding application "for scanning a particular symbology when multiple scanning applications reside on the device." '752 Patent at 3:41-45. But running an application in the background, performing a task more efficiently, or automating something that was otherwise done manually, does not confer patent eligibility. *See Bancorp*, 687 F.3d at 1279 ("Using a computer to accelerate an ineligible mental process does not make that process patent-eligible."). This is especially true since the applicant did not disclose any details on how the automatic detection of barcodes could be achieved. By only claiming the desired result—automatically detecting a pattern like a barcode—without describing any specific roadmap for doing so, these claims also fall short of claiming eligible subject matter under § 101. *See Internet Patents*, 790 F.3d at 1348; *Secured Mail*, 873 F.3d at 910–11.

Other dependent claims recite insignificant pre- or post-solution activity, such as allowing a user to select certain preferences or store data:

| Pre- or Post-Solution Activity | Claims |
|---|---|
| enabling users to select certain preferences | '752 Patent (cls. 2, 3, 18) |
| | '369 Patent (cls. 2, 3, 18) |
| | '190 Patent (cls. 2, 3, 18) |
| detecting barcodes based on user request | '752 Patent (cl. 7) |
| | '369 Patent (cl. 7) |
| | '190 Patent (cl. 7) |
| sending instructions to visual detection applications and remote servers | '752 Patent (cl. 8) |
| | '369 Patent (cl. 8) |
| | '190 Patent (cl. 8) |
| enabling the user to store information | '752 Patent (cl. 11) |
| | '369 Patent (cl. 11) |
| | '190 Patent (cl. 11) |
| providing e-commerce options to the user | '752 Patent (cl. 12) |
| | '369 Patent (cl. 12) |
| | '190 Patent (cl. 12) |
| decoding barcodes using visual search technology | '752 Patent (cls. 15, 23) |
| | '369 Patent (cls. 15, 23) |
| | '190 Patent (cl. 15) |

The remaining claims recite activity like alerting the user and asking to decode a barcode, analyzing a decode string and selecting the appropriate application to decode, allowing the user to select an application to decode the barcode, and displaying information and images. *See, e.g.*, '752 Patent at cls. 6, 10, 13, 14, 16, 19, 20, 21, 22, 26, 27, 28; '369 Patent at cls. 6, 10, 13, 14, 16, 19, 20, 21, 22, 26, 27, 28; and '190 Patent at cls. 6, 10, 13, 14, 16, 19.

Each of these claims, like Claim 1 of the '752 Patent, is not meaningfully limited because these activities are not "essential to the invention." *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, 21 F. Supp. 3d 758, 763 (E.D. Tex. 2014) (noting limitations must "do more than recite pre- or post-solution activity, they [must be] central to the solution itself" to be meaningful) (quotations omitted). Because all of these claims are directed to the abstract idea of

16

data recognition and retrieval and none includes any inventive concept, the claims similarly fail both steps of the *Alice* test.

### B.    The Disproportionate Risk of Preemption Confirms that the Claims Are Abstract.

Because the claimed methods and systems can be implemented using virtually any device capable of taking a photograph, any off-the-shelf scanning/decoding application, and any conventional server capable of sending and receiving information, the Patents-in-Suit risk preempting *all* automated methods or systems for recognizing a pattern, like a barcode, and retrieving data based on that. *See, e.g.*, *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 843 (E.D. Tex. 2014) (finding "preemptive effect . . . broad" where "the claims [were] largely functional in nature, they [did] not provide any significant description of the particular means by which the various recited functions are performed," and "[a]ll that [was] disclosed [was] the ultimate objective"). Therefore, the claims implicate the same preemption concern undergirding the § 101 analysis and should be found ineligible.

## VI.    CONCLUSION

For the foregoing reasons, Brunswick respectfully requests that the Court dismiss Symbology's First Amended Complaint for failure to state a claim upon which relief can be granted.  Because leave to amend would be futile, Brunswick requests dismissal with prejudice.

Dated: June 12, 2018

**FISH & RICHARDSON P.C.**

By: */s/ Jeremy D. Anderson*
Jeremy D. Anderson (No. 4515)
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19801
(302) 658-5070 (Telephone)
(302) 652-0607 (Facsimile)
janderson@fr.com

Neil J. McNabnay
David B. Conrad
Ricardo J. Bonilla
Theresa M. Dawson
Rodeen Talebi
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
mcnabnay@fr.com
conrad@fr.com
rbonilla@fr.com
tdawson@fr.com
talebi@fr.com

COUNSEL FOR DEFENDANT
BRUNSWICK CORPORATION,
D/B/A LIFE FITNESS